```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
PAMELA DOZIER-NIX,            )
                              )
        Plaintiff,            )
                              )
        v.                    )    Civil Action No. 09-593 (RWR)
                              )
THE DISTRICT OF COLUMBIA,     )
                              )
        Defendant.            )
_____)
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Dozier-Nix brings this action against her employer, the District of Columbia, alleging employment discrimination based on sex and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The District of Columbia has moved for summary judgment. Because the District has not shown that it is entitled to judgment as a matter of law on either count of Dozier-Nix's complaint, the motion for summary judgment will be denied.

### BACKGROUND

Dozier-Nix and her husband are employed by the District of Columbia's Department of Public Works ("DPW"). (Am. Compl. ¶ 3; Def.'s Stmt. of Mat. Facts Not in Dispute ("Def.'s Stmt.") ¶ 1; Pl.'s Opp'n at 7.) Dozier-Nix alleges that in October 2007, a DPW General Foreman named Tyrone Bailey, who was in charge of the yard where Dozier-Nix was working, subjected her to sexually suggestive looks and gestures, touched parts of her body, made

-2-

offensive comments regarding her private parts, solicited her for oral sex, and said he would not give her husband the permanent work assignment she asked about unless she accommodated Bailey's sexual proposition.  Dozier-Nix further alleges that in January 2008, Bailey tried to force her legs apart and made a sexually explicit statement.  (Am. Compl. ¶¶ 6-7; Pl.'s Opp'n at 1; Pl.'s Resp. to Def.'s Stmt. ("Pl.'s Resp.") ¶ 5.)  Dozier-Nix rebuffed Bailey's advances.  (Am. Compl. ¶ 7.)  She reported them to two people, union officials Angie Pringle and James Ivy, neither of whom was her supervisor or a DPW manager.  (Def.'s Stmt. ¶¶ 20-22.)  She alleges that she also told her Supervisor, Eric Armstrong, in October 2007 that Bailey was harassing her with sexual comments.  (Pl.'s Opp'n Ex. 2 ("Dozier-Nix Decl.") ¶ 3; see also Def.'s Mem. of P. and A. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") Ex. 3.)  However, the District disputes that she said the harassment was sexual.  (Def.'s Mem. at 9.)  In February 2008, Dozier-Nix tape-recorded a conversation with Bailey, during which Bailey made sexually explicit statements.  (Def.'s Stmt. ¶ 2.)  Dozier-Nix presented the tape recording of Bailey's comments to Armstrong, who reported the incident to the Administrator of the DPW's Sanitation Division, Peter Mitchell.  (Id. ¶¶ 3-4.)  Bailey's harassment stopped after Dozier-Nix presented the tape recording to Armstrong.  (Id. ¶ 7.)  The DPW investigated the incident, and terminated Bailey's employment

-3-

approximately four months after Dozier-Nix provided the recording to Armstrong.  (Id. ¶¶ 5-6.)

According to the District, the DPW has a policy that is provided to all new employees within 90 days after they are hired, that prohibits sexual harassment and identifies the individuals to whom victims of harassment should direct their reports.  (Def.'s Stmt. ¶¶ 14-18.)  Dozier-Nix disputes that the DPW effectively distributed its harassment policy, and states that she did not participate in a training program that included sexual harassment training until after February 2008.  (Pl.'s Resp. ¶¶ 14-16.)

In June 2008, Dozier-Nix filed a sexual harassment and retaliation charge with the Equal Employment Opportunity Commission.  Dozier-Nix's charge of discrimination alleged that her General Foreman had subjected her to sexual harassment and pressed her for sex in exchange for giving her husband a permanent assignment.  (Def.'s Stmt. ¶ 8; Def.'s Mem. Ex. 1.)  In September 2009, Dozier-Nix filed the amended complaint in this case against the District of Columbia, alleging one count of sex discrimination based on hostile work environment (Count 1), and one count of retaliation based on the defendant's refusal to give her husband a permanent assignment (Count 2), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq.  (Am. Compl. ¶¶ 14-17.)

-4-

The District of Columbia has moved for summary judgment on both counts.  It seeks judgment on Count 1, arguing that Dozier-Nix failed to take advantage of the preventative and corrective opportunities, and because the evidence showed that the DPW took prompt action to protect Dozier-Nix when it was notified about the harassment.  It seeks judgment on Count 2 arguing that rebuffing sexual advances is not protected activity that can form the basis of a retaliation claim, that Dozier-Nix herself was not subjected to any unlawful retaliation, and that Dozier-Nix failed to exhaust her administrative remedies for that claim.  Dozier-Nix opposes.

## DISCUSSION

"'Summary judgment may be appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.'"  Pueschel v. Nat'l Air Traffic Controllers Ass'n, 772 F. Supp. 2d 181, 183 (D.D.C. 2011) (quoting Bonaccorsy v. Dist. of Columbia, 685 F. Supp. 2d 18, 22 (D.D.C. 2010) (citing Fed. R. Civ. P. 56(c)).  "'In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence . . . in favor of the nonmovant.'" Pueschel, 772 F. Supp. 2d at 183 (quoting Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986));

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The relevant inquiry 'is the threshold inquiry of determining whether there is a need for a trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Single Stick, Inc. v. Johanns, 601 F. Supp. 2d 307, 312 (D.D.C. 2009) (quoting Anderson, 477 U.S. at 250) (overruled on other grounds by Prime Time Int'l Co. v. Vilsack, 599 F.3d 678 (D.C. Cir. 2010)). A genuine issue is present in a case where the "evidence is such that a reasonable jury could return a verdict for the non-moving party," a situation separate and distinct from a case where the evidence is "so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 248, 252.

I. HOSTILE WORK ENVIRONMENT

"A claim of sexual harassment is cognizable under [Title VII] if the alleged harassment alters, either expressly or constructively, the terms or conditions of an individual's employment." Curry v. Dist. of Columbia, 195 F.3d 654, 659 (D.C. Cir. 1999). "Courts describe a constructive alteration as 'hostile work environment' harassment." Id. (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752 (1998)). To advance a viable hostile work environment claim, Dozier-Nix must show that she suffered harassment because of her sex, that her employer

knew or should have known of the alleged harassment and failed to take remedial action, and that the hostile environment interfered with her work.  See Winston v. Clough, 712 F. Supp. 2d 1, 12 (D.D.C. 2010) (internal citations omitted).  "Not all things that make an employee unhappy create a hostile work environment." Graham, 657 F. Supp. 2d at 216.  "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  Graham, 657 F. Supp. 2d at 216 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)).  "The conduct complained of 'must be extreme to amount to a change in the terms and conditions of employment.'"  Franklin, 600 F. Supp. 2d at 77 (quoting Faragher, 524 U.S. at 788).

 An "employer has an affirmative defense to a hostile environment claim if (1) the employer 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'"  Taylor v. Solis, 571 F.3d 1313, 1318 (D.C. Cir. 2009) (quoting Faragher, 524 U.S. at 807, and citing Ellerth, 524 U.S. at 765).  If the employer has implemented an adequate corporate procedure for handling

-7-

sexual harassment, the employer can avoid liability by showing that a reasonable person in the plaintiff's shoes would have come forward early enough to prevent the harassment from becoming severe or pervasive.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).  "[A]ny unreasonable failure to use any complaint procedure provided by the employer . . . will normally suffice to satisfy the employer's burden[.]"  Taylor, 571 F.3d at 1318 (quoting Ellerth, 524 U.S. at 765).

The District argues that the DPW exercised reasonable care to prevent sexually harassing behavior by having a policy that prohibited sexual harassment, establishing a chain of reporting for victims of sexual harassment, and distributing the sexual harassment policy to new employees within 90 days of their first day of employment.  (Def.'s Mem. at 8-10.)  The District asserts that Dozier-Nix failed to take advantage of the corrective opportunities provided by the DPW because, when Dozier-Nix was first accosted by Bailey in October 2007, she initially reported the harassment to Pringle and Ivy, who were not managers within the DPW.  The District further argues that Dozier-Nix did not report Bailey's harassment to Armstrong, her supervisor, in a manner that caused him to know that she was being sexually harassed, until she presented the recording to him.  (Def.'s Mem. at 10-11.)

-8-

However, Dozier-Nix has shown that material facts regarding those issues are in dispute.  Dozier-Nix disputes that the DPW provided the policy to new employees within 90 days of the day they were hired.  She attaches her declaration and the transcript of Armstrong's deposition, reflecting that neither received sexual harassment training before Bailey's harassment occurred. (Pl.'s Opp'n Ex. 1 ("Armstrong Dep."); id., Dozier-Nix Decl. ¶ 7.)  Dozier-Nix further disputes any failure to report promptly to her supervisor, and asserts that she told Armstrong in October 2007 that Bailey was sexually harassing her.  (Dozier-Nix Decl. ¶¶ 3-4.)  Genuine issues of material fact exist as to whether the defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and as to whether Dozier-Nix unreasonably failed to take advantage of any preventive or corrective opportunities before providing the recording to Armstrong.  The defendant's motion for judgment on Count 1 will be denied.

II.  RETALIATION

"The elements of a claim of retaliation are that the plaintiff engaged in a statutorily protected activity, the employer treated the plaintiff adversely, and a causal connection existed between the two."  Winston, 712 F. Supp. 2d at 11 (citing Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007) and Rochon v. Gonzales, 438 F.3d 1211, 1216-20 (D.C. Cir. 2007)).

-9-

Statutorily protected activities include rebuffing unwanted sexual advances.  See Ogden v. Wax Works, 214 F.3d 999, 1007 (8th Cir. 2000) (holding that the plaintiff engaged in most "basic form of protected conduct" when she rebuffed her supervisor's advances); Williams v. Verizon Wash. D.C., 266 F. Supp. 2d 107, 122-23 (D.D.C. 2003) (stating that the plaintiff engaged in protected activity by rejecting her supervisor's advances); Frentz v. City of Elizabethtown, Civil Action No. 08-621, 2010 WL 4638768 at *5 (W.D. Ky. November 4, 2010) (holding that the plaintiff engaged in a protected activity when she rejected her supervisor's sexual advances)[1]; see also McCain v. CCA of Tenn., 254 F. Supp. 2d 115, 124 (D.D.C. 2003) (holding that a plaintiff alleging retaliation under the D.C. Human Rights Act engaged in a protected activity when she rejected her supervisor's sexual advances); Miller v. Washington Metro. Area Transit Auth., Civil Action No. 05-2342 (RMC), 2007 WL 1720132 at *6 (D.D.C. June 11, 2007) (stating that the plaintiff engaged in a protected activity by rejecting her supervisor's advances and filing a formal EEOC complaint).  Before suing under Title VII, an aggrieved non-federal employee must first file a charge of discrimination

---

[1] But see LeMarie v. Louisiana Dep't of Transp. & Dev., 480 F.3d 383, 389-90 (5th Cir. 2007) (contra); Roberts v. County of Cook, No. 01-C-9373, 2004 WL 1088230 at *4-5 (N.D. Ill. May 12, 2004) (collecting cases reflecting split view, and holding that refusing sexual advances is protected activity under Title VII).

with the EEOC.  <u>Carson v. Sim</u>, 778 F. Supp. 2d 85, 92 (D.D.C. 2011).  If the EEOC dismisses the charge or does not resolve it timely, the employee may bring a civil action herself.  <u>Carson</u>, 778 F. Supp. 2d at 92.  The scope of a Title VII lawsuit following an administrative charge of discrimination is limited to the claims that were included in the EEOC charge, or claims that necessarily could have been expected to come within the scope of any investigation into the charge of discrimination.  <u>See</u> <u>Hairston v. Tapella</u>, 664 F. Supp. 2d 106, 115 (D.D.C. 2009); <u>Iweala v. Operational Techs. Servs.</u>, 634 F. Supp. 2d 73, 83 (D.D.C. 2009).

Here, Dozier-Nix engaged in a protected activity by rebuffing Bailey's harassing sexual advances.  His quid pro quo harassment also would clearly have fallen within the scope of any investigation into the allegations in Dozier-Nix's charge of discrimination.  Further, "a retaliatory action need not be directed at the party who engaged in the protected conduct that prompted it in order to be materially adverse."  <u>Ali v. Dist. of Columbia</u>, 810 F. Supp. 2d 78, 89 (D.D.C. 2011) (citing <u>Thompson v. N. Am. Stainless, LP</u>, 131 S. Ct. 863, 868 (2011) (stating that "[w]e think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired") and <u>DeMedina v. Reinhardt</u>, 444 F. Supp. 573, 580 (D.D.C. 1978) (holding that "tolerance of

-11-

third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII")).

## CONCLUSION AND ORDER

Dozier-Nix has demonstrated the presence of disputed issues of material fact that, if resolved in her favor, could support a reasonable jury finding for her on Count 1 of her complaint. Further, Dozier-Nix exhausted her administrative remedies regarding a cognizable claim of retaliation in Count 2. Therefore, it is hereby

ORDERED that the defendant's motion [25] for summary judgment be, and hereby is, DENIED.

SIGNED this 31st day of March, 2012.

                                              /s/
                                     RICHARD W. ROBERTS
                                     United States District Judge